**John DOE, et al., Plaintiffs,**

v.

**Frank DEPALMA, et al., Defendants.**

No. C–3–99–449.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 31, 2000.

Paul Roger Leonard, Dayton, OH, for Plaintiffs.

Janet Kay Cooper, Cooper & Gentile Co., Dayton, OH, for Defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION TO DISMISS (DOC. # 7–1); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 7–2) OVERRULED, AS MOOT; PLAINTIFFS' COMPLAINT (DOC. # 1) DISMISSED, WITHOUT PREJUDICE TO FILING OF AMENDED COMPLAINT, WITHIN FOURTEEN DAYS FROM DATE; PLAINTIFFS' FAILURE TO FILE AMENDED COMPLAINT WILL RESULT IN DISMISSAL WITH PREJUDICE AND ENTRY OF FINAL JUDGMENT IN FAVOR OF DEFENDANTS

RICE, Chief Judge.

Plaintiffs John and Jane Doe are the parents of James Doe, who was a sixth-

grade student in the Centerville, Ohio, school system in May, 1999. The Defendants are Frank DePalma, the Superintendent of the Centerville school system, Margaret Barclay, a Principal in the Centerville school system, and the City of Centerville Board of Education. The present dispute stems from discipline James Doe received, allegedly for harassing a female student by writing an obscene, sexual comment in her yearbook.[1] As a result of his action, James Doe was issued "written discipline" and received "double detention." The Plaintiffs filed the present declaratory judgment action in state court in August, 1999, seeking a declaration that James Doe's punishment constituted a violation of his First Amendment rights, as well as his rights under the Equal Protection Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution. The Defendants timely removed the action to this Court on September 13, 1999. Thereafter, the Defendants filed a Motion to Dismiss for Failure to State a Claim (Doc. # 7–1) and an alternative Motion for Summary Judgment (Doc. # 7–2). The Plaintiffs have filed a Memorandum opposing both Motions (Doc. # 11).

## I. *Analysis*

The Defendants' Fed.R.Civ.P. 12(b)(6) Motion (Doc. # 7–1) tests the legal sufficiency of the Plaintiffs' Complaint. When ruling upon such a Motion, the Court must accept as true all factual allegations in the Complaint, and any ambiguities must be resolved in the Plaintiffs' favor. The Court may grant the pending Motion to Dismiss only if no set of facts could be proven, consistent with the allegations contained in the Complaint, which would allow the Plaintiffs to recover. *See Hishon v.*

*King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Carter by Carter v. Cornwell,* 983 F.2d 52, 54 (6th Cir.1993).

With the foregoing standards in mind, the Court concludes that the Plaintiffs' Complaint, as presently drafted, fails to state a claim upon which relief may be granted. In Count I of their Complaint, the Plaintiffs allege as follows:

> The actions of Defendants, Centerville School Board, Superintendent Frank DePalma, and Margaret Barclay, in discriminating against the Plaintiff Juvenile by issuing discipline to him when the same or similar conduct by other students has not generated a penalty constitutes a violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments to the Constitution of the United States of America.

(Complaint, attached to Doc. # 1, at ¶ 10).

In support of their Motion to Dismiss, the Defendants note the absence of any allegation that James Doe was disciplined because of his membership in a protected class. (Doc. # 7 at 5–6). In response, the Plaintiffs insist that other Centerville School District students have written words similar to those penned by James Doe, without being disciplined for their actions. (Doc. # 11 at 6–7). According to the Plaintiffs, "[t]hat is the essence of James Doe's allegation that his Equal Protection Rights under our Constitution have been violated." (*Id.* at 7).

■ Even if James Doe has been unfairly singled out for discipline, however, the Plaintiffs have not stated a viable equal protection claim. "The Equal Protection Clause requires public institutions to 'treat similarly situated individuals in a similar

---

1. In their Complaint, the Plaintiffs admit that James Doe wrote the words, "I just sniffed your crack" near the crease on a page of the female student's yearbook. (Complaint, Doc. # 1 at ¶ 3).

manner.' " *Buchanan v. City of Bolivar, Tenn.,* 99 F.3d 1352, 1360 (6th Cir.1996). " 'To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.' " *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir.1990); *Herron v. Harrison,* 203 F.3d 410, 417 (6th Cir.2000) ("An equal protection claim must assert that the plaintiff suffered class-based discrimination."); *Booher v. United States Postal Service,* 843 F.2d 943, 944 (6th Cir.1988) ("Booher seeks to make out a violation of equal protection by claiming he was treated differently from other similarly situated employees. Fatal to this allegation is the fact that there is no claim that Booher was victimized because of some suspect classification, which is an essential element of an equal protection claim. Even assuming there was an unjustified action taken against Booher this single action, without more, cannot form the basis of an equal protection claim."); *Adams v. Tenn. Dept. of Corrections,* 205 F.3d 1339, 2000 WL 145379 (6th Cir. Jan.31, 2000) ("Adams did not state a cognizable equal protection claim because he did not allege that he is a member of a protected class, nor did he allege any facts indicating that the defen-

dants intentionally discriminated against him on the basis of his membership in a protected class.").

In the present case, the Plaintiffs have not identified any specific "class," protected or otherwise,[2] to which James Doe belongs. Nor have they alleged that the Defendants intentionally discriminated against James Doe *because of* his membership in that class.[3] Consequently, Count I of the Plaintiffs' Complaint, as presently drafted, does not state a claim upon which relief may be granted. Accordingly, the Defendants' Motion to Dismiss (Doc. # 7–1) will be sustained, insofar as it relates to Count I of the Plaintiffs' Complaint. In the interest of justice, however, the Court will grant the Plaintiffs leave to file an amended Complaint, within fourteen days from date, curing the pleading defects identified above, provided that they can do so consistent with Fed.R.Civ.P. 11.

■ With respect to Count II of the Plaintiffs' Complaint, the Court concludes that it also fails to state a claim upon which relief may be granted. In Count II, the Plaintiffs allege as follows:

The actions of Defendants, Centerville School Board, Superintendent Frank DePalma, and Margaret Barclay, in dis-

---

**2.** In *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097 (6th Cir.1995), Judge Nathaniel Jones reasoned, in dissent, that membership in a "protected" class is not always required to state an equal protection claim. Absent membership in such a class, Judge Jones reasoned a court should simply apply "rational basis" scrutiny to a claim of discrimination. *Id.* at 1116–1117 (Jones, J., dissenting). For example, if the Plaintiffs alleged that the Defendants had punished James Doe because he was left handed, but did not punish right handed students who wrote similar comments in yearbooks, such an allegation would be subject to "rational basis" equal protection review. In the present case, however, the Plaintiffs have not identified *any* particular "class," protected or

otherwise, to which James Doe belongs. Consequently, the Plaintiffs have not stated a claim upon which relief may be granted. In addition, as set forth above, the Plaintiffs have not alleged that James Doe was disciplined *because of* his membership in any particular class.

**3.** For example, the Plaintiffs could state a claim under the Equal Protection Clause by alleging that the Defendants singled out James Doe for discipline *because of* his gender, race or religion, while failing to discipline students of another gender, race or religion, even though the Defendants were aware that those other students had written similar comments in yearbooks.

ciplining the Plaintiff juvenile for his written words, constitutes a violation of the Plaintiff juvenile's First Amendment Freedom of Speech in that the double entendre at issue is not "obscene" and does not constitute "harassment" of a "sexual" nature which, according to the United States Supreme Court, must be "severe and pervasive."

(Complaint, attached to Doc. # 1 at ¶ 11).

In support of their Motion to Dismiss, the Defendants insist that James Doe's punishment for writing, "I just sniffed your crack," near the crease in a female student's yearbook did not violate his First Amendment rights, regardless of whether his words were legally obscene or whether they constituted legally actionable sexual harassment. (Doc. # 7 at 6–8). In support, the Defendants rely upon *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986), in which the Supreme Court held that a student could be disciplined for speech that was "sexually explicit," even if not legally obscene, because the school was entitled to "disassociate itself" from speech that is "wholly inconsistent with the 'fundamental values' of public school education." *Id.* at 685–686, 106 S.Ct. 3159. The Court also recognized that "[t]he determination of what manner of speech in the classroom . . . is inappropriate properly rests with the school board," rather than with the federal courts.[4] *Id.* at 683, 106 S.Ct. 3159; *see also Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (reasoning that a "school need not tolerate student speech that is inconsistent with its 'basic educational mission . . . even though

the government could not censor similar speech outside the school' "). In light of *Bethel School District,* the Defendants insist that Principal Barclay did not violate James Doe's First Amendment rights by punishing him for what she perceived as inappropriate speech in a school environment.

In response, the Plaintiffs concede that the Defendants were entitled to punish James Doe for his "inappropriate behavior," namely the comment that he wrote in the female student's yearbook. (Doc. # 11 at 6). Consequently, they contend that "the dictates set forth in *Bethel School District* . . . are not at issue." (*Id.*). Rather than challenging the punishment that James Doe received, the Plaintiffs stress that they are contesting the Defendants' right "to subjectively label the words of James Doe and in doing so, [to] infringe upon the juvenile-Plaintiff's First Amendment right to Free Speech." (*Id.*). This argument relates to a disciplinary note sent to James Doe's parents by Defendant Barclay. According to the Plaintiffs' Complaint, the note indicated that James Doe had engaged in "harassment," and it characterized his yearbook comment as "obscene" and "sexual" in nature. (Complaint, attached to Doc. # 1 at ¶ 5).

In their Memorandum, the Plaintiffs reiterate that they are challenging Barclay's characterization of James Doe's comment and not the detention that he received for writing it. The Plaintiffs insist that the yearbook comment is not legally "obscene," and that it does not constitute legally actionable "sexual harassment." Furthermore, they fear that Barclay's er-

---

**4.** *See also Pyle v. South Hadley School Committee,* 861 F.Supp. 157, 159 (D.Mass.1994) ("The First Amendment limits minimally, if at all, the discretion of secondary school officials to restrict so called 'vulgar' speech-including speech containing sexual innuendo, however lukewarm by some standards. . . . [H]ere, the school's exercise of its authority to limit the sexual double entendre on . . . T-shirts, even where there was no immediate prospect of disruption, did not run afoul of the First Amendment.").

roneous use of those words in James Doe's disciplinary record may stigmatize him in the future. In particular, the Plaintiffs reason as follows:

The issue is the subjective determination by a school principal that a double-entendre constitutes a form of "sex harassment" and is "obscene." Those are the words that need to be negated by this Court to insure that the juvenile-Plaintiff is not stigmatized in future educational arenas and workplace opportunities. It is one thing for the juvenile-Plaintiff to be disciplined for inappropriate behavior; it is quite another for a public school principal to mislabel the written words of James Doe as "obscene" and a form of "sexual harassment," and, in actuality discipline him for those reasons. If truly, James Doe was disciplined for "inappropriate behavior" then there should be no reason to oppose the redaction of the words "obscene" and "sex harassment" from the discipline at issue.

(Doc. # 11 at 6).

Upon review, the Court finds no violation of James Doe's First Amendment rights based upon Barclay's notation that he had engaged in "harassment," which she characterized as being "obscene" and "sexual" in nature. As set forth above, the Plaintiffs do not argue that the First Amendment prohibited the Defendants from disciplining James Doe for his speech. To the contrary, they concede that the Defendants had a right to determine that his speech was "inappropriate" and to discipline him for it. (*See* Doc. # 11 at 6 and Complaint, attached to Doc. # 1 at Preamble). In making this concession, the Plaintiffs have admitted, at least implicitly, that the comment at issue *was not* protected by the First Amendment, given the context in which James Doe wrote it. *See Bethel School District,* 478 U.S. at

683–685, 106 S.Ct. 3159 (recognizing that the First Amendment does not prohibit school officials from prohibiting vulgar or offensive speech, including sexual innuendo).

The Plaintiffs' real argument is that Defendant Barclay violated James Doe's constitutional rights by referring to his speech in a disciplinary record as "harassing," "sexual" and "obscene." The constitutional right *potentially* implicated by this argument, however, is found in the Fourteenth Amendment, not the First Amendment. The Plaintiffs argue that Barclay's "mislabeling" of James Doe's speech as "sexual harassment" and "obscene" may stigmatize him with respect to future educational or employment opportunities. (Doc. # 11 at 6). This argument suggests a deprivation of James Doe's liberty interest in his good name and reputation. In general, a liberty interest is implicated where the name, reputation, honor or integrity of a person is damaged, and the circumstances impose some stigma or other disability that forecloses educational or employment opportunities. In *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court recognized that the Due Process Clause of the Fourteenth Amendment "forbids arbitrary deprivation of liberty." As a result, " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied." *Id.,* quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

The Sixth Circuit has recognized, however, that defamation by a government employee and damage to reputation alone are insufficient to implicate a protected liberty interest:

Injury to reputation, standing alone, is not a liberty interest protected by the Fourteenth Amendment. *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). The Supreme Court has stressed that 42 U.S.C. § 1983 is not an avenue for redress of any and all possible tort claims against the government, and that there exists "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702, 96 S.Ct. at 1161. Rather, the Court has limited the scope of an actionable liberty interest deprivation to situations involving termination of government employment or the loss of a legal right or status previously enjoyed under state or federal law. *Id.* at 710–11, 96 S.Ct. at 1164–65. In other words, when a plaintiff alleges the loss, infringement or denial of a government right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect, a claim for deprivation of liberty without due process of law will lie. Defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation.

*Mertik v. Blalock,* 983 F.2d 1353, 1362 (6th Cir.1993).

In the present case, the Court need not (and does not attempt to) decide (1) whether the remarks on James Doe's disciplinary form deprived him of a liberty interest sufficient to invoke the procedural protections of the Due Process Clause, or (2) whether James Doe received such protections. The Plaintiffs' Complaint contains no allegation that the Defendants have violated the Due Process Clause of the Fourteenth Amendment. Consequently, that issue is not before the Court. For present purposes, the Court concludes only that Count II of the Plaintiffs' Complaint, which alleges a violation of the First Amendment, fails to state a claim upon which relief may be granted. Accordingly, the Defendants' Motion to Dismiss (Doc. # 7–1) will be sustained, insofar as it relates to Count II of the Plaintiffs' Complaint. In the interest of justice, however, the Court will grant the Plaintiffs leave to file an amended Complaint, within fourteen days from date, pleading a due process claim under the Fourteenth Amendment, based upon a deprivation of James Doe's liberty interest in his good name, provided that they can do so consistent with Fed.R.Civ.P. 11.

## II. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Defendants' Motion to Dismiss (Doc. # 7–1) is hereby sustained. The Defendants' alternative Motion for Summary Judgment (Doc. # 7–2) is overruled, as moot. The Plaintiffs' Complaint is dismissed, without prejudice to the filing of an amended Complaint, within fourteen days from date, curing the pleading defects identified in the Court's analysis of Count I, *supra,* and asserting a Fourteenth Amendment due process claim (provided that the Plaintiffs can do so consistent with Fed.R.Civ.P. 11). If the Plaintiffs do not file an amended Complaint, within fourteen days from date, the Court's will dismiss this action, with prejudice, and will enter final judgment in favor of the Defendants.